UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DF VENTURES, LLC | No. |
| Plaintiff, | |
| -against- | COMPLAINT |
| AARON & GIANNA, PLC, and DEWAYNE WILLIAMS, | |
| Defendants. | Plaintiff Demands a Trial by Jury |

Plaintiff DF Ventures, LLC ("DF Ventures" or "Plaintiff"), by and through their attorneys Levine & Blit PLLC, complaining of defendants Aaron & Gianna, PLC ("Aaron & Gianna") and DeWayne Williams ("Williams") (collectively, "Defendants") hereby alleges:

## NATURE OF THE ACTION

1. This civil action is brought to remedy Defendants' breach of contract.

2. Plaintiff seeks declaratory and injunctive relief; an award of monetary damages for the economic losses caused by the Defendants' breach of contract; prejudgment interest; reasonable attorneys' fees; costs of this action; and any such other and further relief this courts deems just and equitable.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. Plaintiff is an LLC duly organized and based in New York State. Defendants are PLC, and an individual based in the State of Louisiana.

4. The amount in controversy exceeds $75,000.

1

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6. Plaintiff is an active limited liability company duly formed under the laws of the State of New York with a principal place of business at 401 E. 80th Street, 17F, New York, New York 10075.

7. Defendant Aaron & Gianna is an active professional corporation duly formed under the laws of the State of Louisiana with a principal place of business at 201 Saint Charles Avenue, Suite 3800, New Orleans, Louisiana, 70170.

8. Defendant Williams is an attorney and principal at Aaron & Gianna, who upon information and belief, is licensed to practice law in the State of Louisiana. His principal place of business is 201 Saint Charles Avenue, Suite 3800, New Orleans, Louisiana, 70170.

## FACTUAL ALLEGATIONS

9. In 2020, during the height of the COVID-19 pandemic, Plaintiff was working with sellers to procure personal protective equipment ("PPE") to fulfill various COVID-19 related contracts.

10. On or around April 9, 2020, during the height of the COVID-19 pandemic, a company, Vetcomm, LLC ("Vetcomm") contacted Plaintiff. Vetcomm held itself out to be an authorized vendor for Medline Industries, Inc., ("Medline") an Illinois corporation, authorized to sell PPE to Plaintiff.

11. Medline is the nation's largest privately held manufacturer and distributor of medical supplies with recent annual sales of approximately $20 billion per year.

12. Plaintiff was in desperate need for PPE to fulfill contracts, but was wary of working with an unknown company like Vetcomm, especially for a fairly large order.

13. Plaintiff was further concerned that Vetcomm would not be able to fulfill the order.

14. On or around April 9, 2020, Vetcomm sent Plaintiff a price list of available PPE for sale.

15. On or around April 15, 2020, Vetcomm sent Plaintiff a letter from the US Department of Health and Human Services proving Medline's certifications for their surgical apparel along with Medline's 510(k) certification.

16. Vetcomm sent a draft purchase order to Plaintiff to facilitate further discussions for the purchase by Plaintiff of Five Hundred Thousand (500,000) level-2 surgical gowns to be delivered during April, 2020.

17. Vetcomm introduced Plaintiff to its lawyers, Aaron & Gianna, and in particular, DeWayne Williams, a shareholder of the firm.

18. As part of the agreement, Vetcomm, Plaintiff, and Aaron & Gianna negotiated an escrow agreement ("Escrow Agreement") whereby Aaron & Gianna agreed to serve as Escrow Agent for the safe distribution of funds paid by Plaintiff to Defendants' client, Vetcomm, in accordance with the Escrow Agreement.

19. Plaintiff's President, Mr. Lawrence Fox, had several conversations with Williams. Williams stated that he knew Vetcomm and its principals well, which added credibility to the proposed transaction.

20. Williams sent Plaintiff a draft Escrow Agreement on April 16, 2020.

21. Plaintiff provided comments to the draft of the Escrow Agreement, detailing that it was material and germane to the proposed transaction that the Escrow Agent (Aaron & Gianna) would only distribute the funds deposited from Plaintiff directly to Medline to ensure that the order was correctly processed and paid for and so that the funds were secure.

22. It was imperative to Plaintiff that the funds were sent directly to Medline, as Medline is a highly reputable multi-billion dollar company, that is known to stand behind their products and would be able to fulfill the order, or at the very least, return the money.

23. On April 16, 2020, Defendant Williams emailed Plaintiff and said "Per our discussion, we will add into the Escrow Agreement that all payments to the Manufacturer will be made directly by the Escrow Agent."

24. On or around April 18, 2020, Vetcomm and Plaintiff finalized an Invoice for the purchase of 500,000 level-2 surgical gowns and Escrow Agreement. As part of the agreement, an initial payment of $113,000 was deposited into the escrow account set up by Mr. Williams at Aaron & Gianna, and that money was then to be sent to Medline, the manufacturer, directly. Attached herein as Exhibit "A" is a true and accurate copy of that Invoice and Escrow Agreement.

25. Specifically relying upon the Escrow Agreement and the fact that funds would only be distributed to the manufacturer, Medline, Plaintiff wired the initial deposit of $113,000 to the escrow account on April 17, 2022.

26. On April 17, 2020, Defendant Williams emailed Plaintiff and Vetcomm, stating "$113,000.00 pending in our account. Waiting wiring instructions to Manufacturer."

27. On April 20, 2022, Williams emailed Plaintiff and Vetcomm, "This will confirm that Aaron & Gianna, PLC has just completed a wire transfer to the manufacturer in the amount of $113,000.00. Reference Number is 2417."

28. Plaintiff reasonably believed that Mr. Williams and Aaron & Gianna were reputable and would honor the Escrow Agreement and fiduciary obligations thereunder, and disburse the funds directly to the manufacturer, Medline.

29. Plaintiff had no reason to believe that the Defendants would disperse the funds to anyone other than the manufacturer, Medline, as was the agreement between the parties.

30. Williams and Aaron & Gianna confirmed that the funds had been indeed transferred to Medline.

31. At no time prior to dispersing the funds did the Defendants contact the Plaintiff and advise the Plaintiff that Defendants were asked to disperse the funds to any party other than the manufacturer, Medline.

32. At no time prior to dispersing the funds did the Defendant obtain the Plaintiff's consent to disperse the funds to any party other than the manufacturer, Medline.

33. At no time prior to dispersing the funds to a party not set forth in the Escrow Agreement did the Defendants provide notice to the Plaintiff that it intended to ignore the Escrow Agreement and sua sponte disperse the funds to a party not set forth in the Escrow Agreement.

34. It turns out that Plaintiff learned later on that despite Williams communication that the funds had been indeed been wired to the Medline, the funds had not been sent to the Medline, but rather to a party (Medx One Corp in Arizona) not specified in the Escrow Agreement, that research has shown was formed less than three weeks earlier (March 31, 2020) and upon information and belief was an undercapitalized company owned by a friend of one of the principals of Vetcomm.

35. It is clear that at no time prior to dispersing the funds did the Defendants do any due diligence to determine who the party was that Defendants were sending the funds to, why they were sending such funds to a party other than Medline and how Plaintiff's funds were being protected.

36. The Defendants provided the money to an unknown party without the consent of the Plaintiff despite knowing very well that the one of the primary purposes of the Escrow Agreement was to prevent the funds from going anywhere other than to Medline.

37. Due to Defendants' actions, Plaintiff's funds were diverted and absconded with, and Plaintiff never received the funds back.

38. Plaintiff never received any gowns from the Defendants' clients or from Medline.

39. Plaintiff has been defrauded of $113,000.00 as the Defendants have yet to return such funds nor has their client.

40. Upon information and belief, Defendants engaged in a conspiracy with its clients to defraud the Plaintiff of $113,000.

## FIRST CAUST OF ACTION AGAINST DEFENDANTS

### (Breach of Contract)

41. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 40, as if fully set forth therein.

42. Pursuant to the acts and practices alleged herein, Plaintiff and Defendants entered in to a legally enforceable, binding contract when Plaintiff, Aaron & Gianna and Vetcomm entered into the Escrow Agreement, in conjunction with Plaintiff and Vetcomm agreeing to the purchase and sale of the PPE.

43. At all times relevant to this action, Plaintiff performed its duties under the contract, namely transferring $113,000 to the escrow account.

44. Pursuant to the acts and practices alleged herein, Defendants breached the Escrow Agreement.

45. As a direct result of Defendants' breach of contract, Plaintiff has sustained measured economic loss.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
## (FRAUD)

46. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 45, as if fully set forth therein.

47. Pursuant to the acts and practices alleged herein, Plaintiff and Defendants entered in to a legally enforceable binding contract when Plaintiff, Aaron & Gianna and Vetcomm entered into the Escrow Agreement.

48. Aaron & Gianna, Vetcomm, and Plaintiff signed the Escrow Agreement.

49. Defendants misrepresented that any money put in to the escrow account would be released to the Manufacturer, Medline.

50. Defendants knew that it was false that the money would be released to the Manufacturer, Medline, and PPE gowns would be delivered to Plaintiff.

51. Defendants made this material misrepresentation of facts to induce Plaintiff to enter in to the Escrow Agreement.

52. Plaintiff relied upon Defendants' statements and written contract that the money would be released to Medline to further a business deal involving PPE.

53. Due to that reliance, Plaintiff was damaged in the amount of $113,000.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
## (UNJUST ENRICHMENT)

54. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 53, as if fully set forth therein.

7

55. Defendants were enriched.

56. That enrichment came at Plaintiffs expense.

57. It is against equity and good conscience that Defendants get enriched by taking $113,000 from Plaintiff, without providing the goods bargained for.

### FOURTH CASE OF ACTION AGAINST DEFENDANTS
### (BREACH OF CONTRACT)

58. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 57, as if fully set forth therein.

59. Plaintiff had a contract with Aaron & Gianna, specifically an escrow agreement, wherein Aaron & Gianna was to act as an escrow agent and fiduciary for funds deposited in an escrow account on behalf of Plaintiff.

60. Plaintiff deposited $113,000 in to the escrow account in performance of the contract.

61. Defendant Aaron & Gianna failed to perform by either transferring the $113,000 to Medline for the PPE, or returning the $113,000 to Plaintiff. Rather, upon information and belief, Aaron & Gianna transferred the money to newly formed and undercapitalized third party.

62. This failure to perform damaged Plaintiff in the amount of $113,000.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### (CONVERSION)

63. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 62, as if fully set forth therein.

64. Plaintiff had a possessory right in $113,000.

65. Plaintiff deposited $113,000 in to an escrow account controlled by Defendants. The agreement called for that money to be used to pay Medline.

66. Defendants have dominion over $113,000. Defendants have absconded with Plaintiff's $113,000, in derogation of Plaintiff's rights to the $113,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment containing the following relief:

a) An order declaring Defendants have breached the Escrow Agreement with Plaintiff;

b) An order awarding monetary damages to Plaintiff for economic losses sustained;

c) An award of Plaintiff's reasonable attorneys' fees;

d) An award of the Plaintiff's costs of this action; and

e) Any such other and further relief this court deems just and equitable.

Dated: October 31, 2022
New York, New York

_____

LEVINE & BLIT, PLLC
Matthew J. Blit, Esq.
*Attorneys for Plaintiff*
350 Fifth Avenue, Suite 4020
New York, NY 10118
Tel. (212) 967-3000
mblit@levineblit.com