UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                       :

DF VENTURES, LLC,                       :

                                        :

                Plaintiff,         :

                                        :               22-cv-9586 (LJL)

        -v-                   :

                                        :             OPINION AND ORDER

AARON & GIANNA, PLC, and DEWAYNE  :
WILLIAMS,                             :

                                        :

                Defendants.     :

------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Defendants Aaron & Gianna, PLC ("Aaron & Gianna") and DeWayne Williams

("Williams" and with Aaron & Gianna, "Defendants") move for an Order dismissing the Second

Amended Complaint ("SAC") against them pursuant to Federal Rule of Civil Procedure 12(b)(2)

for lack of personal jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim.  Dkt. No. 20.

       For the following reasons, Defendants' motion to dismiss is granted in part and denied in

part.

## BACKGROUND

       For purposes of this motion, the Court accepts as true the well-pleaded allegations of the

SAC as supplemented by the documents incorporated by reference.  *See Gray v. Wesco Aircraft*

*Holdings, Inc.*, 454 F. Supp.3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir.

2021).[1]

---

[1] "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking
no account of its basis in evidence, a court adjudicating such a motion may review only a narrow
universe of materials."  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Although

Plaintiff DF Ventures, LLC ("DF Ventures" or "Plaintiff") is a New York limited liability company that in 2020, during the COVID-19 pandemic, worked with sellers to procure personal protective equipment ("PPE") to fulfill various COVID-19 related contracts.  Dkt. No. 17 ¶¶ 10, 13.  Aaron & Gianna is a law firm in Louisiana.  *Id.* ¶ 11.  Williams is an attorney, and a principal and shareholder of Aaron & Gianna.  *Id.* ¶¶ 12, 21.

On or around April 9, 2020, Plaintiff was contacted by a company named Vetcomm, LLC ("Vetcomm"), which held itself out to be an authorized vendor for Medline Industries, Inc, the nation's largest privately held manufacturer and distributor of medical supplies with recent sales of approximately $20 billion annually.  *Id.* ¶¶ 14–15.  Vetcomm sent Plaintiff a price list of

---

courts generally do not look beyond the facts stated on the face of the complaint, "'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inv. v. Sum Holding*, 949 F.2d 42, 47–48 (2d Cir. 1991)).  "As a necessary corollary to the foregoing principles, a plaintiff cannot avoid judicial consideration of a document upon which it bases its complaint by the expedient refusal to attach it to the pleading or refer to it *in haec verba*."  *Bongiorno v. Baquet*, 2021 WL 4311169, at *10 (S.D.N.Y. Sept. 20, 2021).  "Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' we may consider its contents even if it is not formally incorporated by reference."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (alteration in original).  "Th[is] exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

Although Plaintiff did not attach the Escrow Agreement or Invoice to the SAC, Dkt. No. 20-4, the SAC makes clear, definite, and substantial reference to both of those documents.  There is no dispute as to the authenticity of those documents and they are thereby incorporated into the SAC by reference.  *See Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 2022 WL 4815615, at *20 (S.D.N.Y. Sept. 30, 2022) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (quoting *McKeefry v. Town of Bedford*, 2019 WL 6498312, at *3 (S.D.N.Y. Dec. 2, 2019))).  The Court is thus permitted to consider the entirety of the documents, including portions not quoted in the complaint, in deciding the motion to dismiss.

available PPE for sale and a letter from the United States Department of Health and Human Services proving Medline's certifications for their surgical apparel, along with Medline's 510(k) certification. *Id.* ¶¶ 18–19. Vetcomm also introduced Plaintiff to its lawyers, Aaron & Gianna, and specifically, Williams. *Id.* ¶ 21.

To facilitate discussions, Vetcomm sent Plaintiff a draft purchase order providing for Plaintiff's purchase of 500,000 level-2 surgical gowns to be delivered during April 2020. *Id.* ¶ 20. But Plaintiff was wary of working with an unknown company such as Vetcomm for such a substantial order, *id.* ¶ 16, and was concerned that Vetcomm would not be able to fulfill the order, *id.* ¶ 17. Plaintiff's president had several conversations with Williams, during which Williams stated that he knew Vetcomm and its principals well, which added credibility to the proposed transaction. *Id.* ¶ 23.

Ultimately, Plaintiff and Vetcomm agreed that Plaintiff would purchase from Vetcomm 500,000 level-2 surgical gowns to be manufactured by Medline and to be provided to the State of New York (the "State"). *Id.* ¶ 28. The transaction was documented by an Escrow Agreement which was first sent to Plaintiff by Williams on April 16, 2020. *Id.* ¶ 24.[2] Plaintiff provided comments to the draft of the Escrow Agreement, detailing that it was material and germane to the proposed transaction that Aaron & Gianna, as escrow agent, would only distribute the funds deposited by Plaintiff directly to Medline to ensure that the order was correctly processed and paid for, and so that the funds were secure. *Id.* ¶ 25. It was imperative to Plaintiff that the funds be sent directly to Medline, as Medline was a highly reputable multi-billion dollar company,

---

[2] Although the Escrow Agreement attached to the pleadings submitted to the Court is not signed by Plaintiff or by Defendant, it is pleaded that the agreement is legally binding, *id.* ¶ 46, and both parties proceed for purposes of this motion on the assumption that they are bound by the agreement.

known to stand behind its products and its obligations.  *Id.* ¶ 26.  On April 16, 2020, Williams emailed Plaintiff and said, "[p]er our discussion, we will add into the Escrow Agreement that all payments to the Manufacturer will be made directly by the Escrow Agent."  *Id.* ¶ 27.

The transaction was finalized on or around April 18, 2020 and was documented by the Escrow Agreement agreed to by Plaintiff, Aaron & Gianna, and Vetcomm, which attached and incorporated by reference a proforma invoice from Vetcomm to Plaintiff.  Dkt. No. 20-4.  The invoice provided for the purchase by Plaintiff from Defendant, for a total purchase price of $1,130,000, of the 500,000 surgical gowns to be delivered in three installments and shipped to the State.  *Id.* at p. 6.  The first installment of 100,000 units was to be delivered by April 19, 2020, the second installment of 100,000 units was to be delivered by April 21, 2020, and the third installment of 300,000 units was to be delivered by April 24, 2020.  *Id.*  The Escrow Agreement appointed Aaron & Gianna as escrow agent and required Plaintiff to deposit the purchase price of $1,130,000 into an escrow account to be managed by Aaron & Gianna in two separate installments: an initial deposit of $113,000 upon execution of the agreement and the remaining $1,017,000, on or before April 20, 2020.  *Id.* ¶¶ 2, 4.  The Escrow Agreement further provided that Aaron & Gianna would disburse the funds in the escrow account in separate installments according to a payment schedule set forth in paragraph six: half of the funds needed to secure the first installment of 100,000 units—or $113,000—was to be released immediately to Medline on behalf of Vetcomm in order to secure the order of 100,000 units from Medline.  *Id.* ¶ 6(a).  The remaining half of the funds needed for the 100,000 units would be released to Vetcomm upon Vetcomm providing Plaintiff with a copy of an original quality control report from Medline, and a copy of an official Airway Bill of Lading demonstrating that the units were packed on an airplane and in transit.  *Id.* ¶ 6(b).  Plaintiff had the right to terminate the Escrow

Agreement for non-compliant goods within forty-eight hours of delivery of the goods if the State reasonably deemed them to have not met the specifications set forth in the invoice.  *Id.* ¶ 6(c). Upon the expiration of the forty-eight-hour period or the receipt of written confirmation of the acceptance of the first installment of 100,000 units—whichever came first—Aaron & Gianna would be required to distributed half of the funds needed to secure the additional 400,000 units (or $452,000) directly to Medline on behalf of Vetcomm to secure the order of 400,000 units from Medline.  *Id.* ¶ 6(d).  The remaining half of the escrowed funds needed for the remaining 400,000 units would be released to Vetcomm upon the State receiving such units.  *Id.* ¶ 6(e).

> Paragraph 8 of the Escrow Agreement states in pertinent part as follows:

> Escrow Agent will disburse the funds from the escrow account in accordance with the payment schedule identified in paragraph "6" above, and in connection with written instructions from the Seller, or the Seller's designated counsel, broker, or agent.  Such instructions may be given in duplicate counterparts and delivered via electronic mail.  Said instructions shall be delivered at least twenty-four (24) hours before disbursement is needed.  All parties confirm and agree that after such a disbursement, Escrow Agent will be released and discharged from any further duty or obligation hereunder with regard to any such disbursement made in accordance with the terms of this Paragraph "8."

*Id.* ¶ 8.  Paragraph 9 of the Escrow Agreement provides:

> Escrow Agent will be entitled to rely upon the aforementioned instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein.  All parties further confirm and agree that the Escrow Agent does not assume any responsibility for any of the transactions to be performed and will perform the Escrow Agent services solely pursuant to this Agreement, and at the direction of Seller per written instruction and pursuant to the payment schedule as identified in paragraph "6" above.

*Id.* ¶ 9.

Under the Escrow Agreement, notices were required to be sent by email (with an immediate confirmation by telephone call) to Plaintiff to the attention of its President, Larry Fox,

to Vetcomm to the attention of Deron Brown, and to Aaron & Gianna to the attention of Williams.  *Id.* ¶ 14.[3]

Relying on the Escrow Agreement and its understanding that the funds would only be distributed to Medline, Plaintiff wired the initial deposit of $113,000 to the escrow account on April 17, 2020.  Dkt. No. 17 ¶ 29.  On April 17, 2020, Williams emailed Plaintiff and Vetcomm, stating "$113,000 pending in our account.  Waiting wire instructions to Manufacturer."  *Id.* ¶ 30.

On April 20, 2020, Deron Brown (the authorized representative of Vetcomm under the Escrow Agreement) sent an email to Williams (the authorized representative of Aaron & Gianna under the Escrow Agreement) entitled "Wiring Instructions for Medx One."  Dkt. No. 20-5.  It stated: "this is the wire instructions for the New York gowns."  *Id.*  It attached wire instructions for an account in the name of Medx One, Inc.  *Id.*  On April 20, 2020, Williams emailed Plaintiff and Vetcomm, stating "[t]his will confirm that Aaron & Gianna, PLC has just completed a wire transfer to the manufacturer in the amount of $113,000.  Reference Number is 2417."  Dkt. No. 17 ¶ 31.

In fact, the funds were not sent to Medline but were sent to Medx One Corp. in Arizona.  *Id.* ¶ 38.  Although Medx One was identified in Brown's April 20, 2020 email, it is not specified in the Escrow Agreement.  *Id.*  It was formed fewer than three weeks before the funds were wired to it, and is an undercapitalized company owned by a friend of one of the principals of Vetcomm.  *Id.*  Plaintiff never received any gowns from Medline.  *Id.* ¶ 42.  The $113,000 also has not been returned to Plaintiff.  *Id.* ¶ 43.

---

[3] The Escrow Agreement is governed by the laws of Louisiana.  Dkt. No. 20-4 ¶ 15 ("This Agreement is intended as a contract under the laws of the State of Louisiana and will be governed thereby and construed in accordance therewith.").

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on November 10, 2022.  Dkt. No. 8.[4]  On

November 14, 2022, Plaintiff filed a First Amended Complaint, Dkt. No. 9, and on March 16,

2023, Plaintiff filed the SAC, Dkt. No. 17.[5]  The SAC contains two claims for breach of contract,

Dkt. No. 17 ¶¶ 35–49, 62–66, as well as claims for fraud, *id.* ¶¶ 50–57, unjust enrichment, *id.*

¶¶ 58–61, and conversion, *id.* ¶¶ 67–70.

On May 5, 2023, Defendants filed this motion to dismiss along with a memorandum of

law in support of the motion.  Dkt. No. 20.  Plaintiff filed a memorandum of law in opposition to

the motion on June 16, 2023.  Dkt. No. 24.  On July 7, 2023, Defendants filed a reply

memorandum of law in further support of the motion.  Dkt. No. 27.

## LEGAL STANDARD

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "[T]he showing a plaintiff must make

to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending

on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722

F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902

F.2d 194, 197 (2d Cir. 1990)).  Where, as here, jurisdictional discovery has not been conducted,

the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that

jurisdiction is proper.  *Id.* at 85; *see also Metro. Life Ins. Co.*, 84 F.3d at 567.  This *prima facie*

showing "must include an averment of facts that, if credited by the trier, would suffice to

---

[4] Plaintiff first attempted to file the complaint on November 9, 2022.  Dkt. No. 1.  The complaint was rejected for a filing error.  *Id.*

[5] The filing was originally rejected for a filing error on March 15, 2023.  Dkt. No. 16.

establish jurisdiction over the defendant." *Dorchester Fin. Sec.*, 722 F.2d at 85.  While the Court

"construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court

"will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a

legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714

F.3d 659, 673 (2d Cir. 2013).  Additionally, "[a] plaintiff 'must establish the court's jurisdiction

with respect to each claim asserted.'"  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68,

83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted, a complaint must include "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of

the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement." *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has

facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*,

550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).  When

adjudicating a motion to dismiss under Rule 12(b)(6), the court considers not only the well-

pleaded allegations of the complaint but documents incorporated by reference and "matters of

which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see Gray*, 454 F. Supp. 3d at 382–83.

## DISCUSSION

Defendants move to dismiss the SAC for lack of personal jurisdiction. Dkt. No. 20-2 at 8–10. Defendants also move, in the alternative, to dismiss the SAC for failure to state a claim for relief. Defendants argue that Plaintiff's claims for fraud, conversion and unjust enrichment are governed by Louisiana law and are time-barred under that law by Louisiana's one-year statute of limitations. *Id.* at 10–12. Defendants further argue that Plaintiff's breach of contract, fraud, unjust enrichment, and conversion claims fail to state a claim for relief because Defendants disbursed the escrowed funds in accordance with the Escrow Agreement and its instructions. *Id.* at 12–16. Finally, and in the further alternative, Defendants argue that the case should be transferred to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a).[6] *Id.* at 16–17.

## I. Personal Jurisdiction

The Court begins with the challenge to its personal jurisdiction over Defendants. *See, e.g.*, *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020).[7] "A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question and must dismiss the action against any defendant over

---

[6] Discovery in this case has been stayed pending a decision on the motion to dismiss. March 9, 2023 Minute Entry.

[7] In reviewing whether a plaintiff has met the burden of pleading that the Court can exercise personal jurisdiction over Defendants with respect to its claims, the court "can consider materials outside the pleadings, including affidavits and other written materials," *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015), submitted by either party, *see Pearson Educ., Inc. v. ABC Books LLC*, 2020 WL 3547217, at *3 (S.D.N.Y. June 30, 2020); *see also Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, 2001 WL 1468168, at *1 (S.D.N.Y. 2001) (reviewing a motion to dismiss for lack of personal jurisdiction based on facts "drawn from the amended complaint, affidavits, and documentary exhibits submitted by *both parties*" (emphasis added)).

whom it lacks personal jurisdiction." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022); *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 6899486, at *4 (S.D.N.Y. 2020).  To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process. *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

"In New York, there are two ways to establish personal jurisdiction over a defendant: (1) 'general jurisdiction' under N.Y. C.P.L.R. § 301; and (2) 'specific jurisdiction' under N.Y. C.P.L.R. § 302." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015).  A defendant is subject to general personal jurisdiction if he is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982) (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)).  Plaintiff alleges no facts to support the contention that Aaron & Gianna, a law firm incorporated and based in Louisiana, or Williams, a resident of Louisiana, have sufficient ties to New York to establish a finding of general jurisdiction over either Defendant.  Plaintiff does not allege that either Defendant maintains officers or employees in New York, performs regular work in New York, or advertises in New York.  Accordingly, general personal jurisdiction does not lie under N.Y. C.P.L.R. § 301.[8]

---

[8] Plaintiff argues that the Court has general jurisdiction under Section 301 because "Defendants solicited business from Plaintiff, a New York company."  Dkt. No. 24 at 6.  But that is not sufficient to support general personal jurisdiction.  *See, e.g.*, *Sonera Holding B.V. v. Cukurova*

New York's long-arm statute, C.P.L.R. Section 302(a), provides for specific personal jurisdiction.  It states:

> (a)      Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> > 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> >
> > 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> >
> > 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> >
> > > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> > >
> > > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

N.Y. C.P.L.R. § 302(a).

Plaintiff asserts that this Court has jurisdiction to hear Plaintiff's claims against Defendants pursuant to C.P.L.R. § 302(a)(1), *see* Dkt. No. 24 at 4–6, which confers personal jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state," "[a]s to a cause of action arising" from the transaction of such business, C.P.L.R. § 302(a)(1).  "Although Section 302(a)(1) is typically invoked in breach of contract cases, 'it applies as well to actions in tort when supported by a

---

*Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (holding that a corporation's contacts with New York did not "come close to making it 'at home' there" even though the corporation solicited business from two New York-based funds, among other contacts that the corporation had with New York).

sufficient showing of facts.'" *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Singer v. Walker*, 209 N.E.2d 68, 81 (N.Y. 1965)).  To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(1), "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci*, 732 F.3d at 168); *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) ("[J]urisdiction is proper even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (internal citation and quotation marks omitted)).

The first element—that the defendant must have transacted business within the state—is satisfied if the defendant "purposefully avails itself of the privilege of conducting activities within [New York]," and thereby invokes the benefits and privileges of New York law such that it should reasonably expect to defend its actions here.  *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)); *see Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 61 (2d Cir. 2012).  Section 302(a)(1) is a "single act statute," meaning that, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful . . . ."  *Deutsche Bank Sec., Inc. v Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)); *see Eades*, 799 F.3d at 168; *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999) (holding that although the defendant "need not be physically present" in the state for the court to have personal jurisdiction, "there must be some transaction attributable to the one sought to be held *which occurs in New York*.") (emphasis in original).  Purposeful availment

"requires more than 'random, fortuitous, or attenuated contacts.'"  *Wahlhuetter v. Collegehumor.com, LLC*, 2021 WL 6205506, at *5 (S.D.N.Y. Nov. 29, 2021) (quoting *Cap. Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 357–58 (S.D.N.Y. 2009)).  It is the "quality" of the defendant's contacts with New York that is "the primary consideration" and not their quantity.  *Licci*, 673 F.3d at 62 (quoting *Deutsche Bank*, 7 N.Y.3d at 71); *Fischbarg*, 880 N.E.2d at 27; *N. Fork Partners*, 2020 WL 6899486, at *6.  Sometimes a single act is sufficient while other times "an ongoing course of conduct or relationship in the state" may be necessary.  *Id.* at 62.  As relevant to the instant case, "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself."  *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y.2005) (internal citations and quotation marks omitted).

"As for the second part of the test,"—that the claim asserted must arise from that business activity—"[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted).  "A connection that is 'merely coincidental' is insufficient to support jurisdiction."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  "[T]hese standards connote, at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim."  *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012).  "In effect, the 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction."  *Id.* at 900–01.

Plaintiff has sufficiently pleaded that this Court can exercise personal jurisdiction over Defendants for each of Plaintiff's claims.  First, with respect to Plaintiff's fraud claim, Defendants' contacts with New York while negotiating the Escrow Agreement are sufficient to establish that Defendants purposefully availed themselves of the privilege of conducting business in the state.  While "[c]ourts applying New York law have declined to extend jurisdiction over defendants simply on the basis of telephone calls and other communications sent to New York," *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010), where "the purpose of the calls is for the defendant to actively participate in business in New York, then they alone may support a finding" of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1), *Digit. Lab Sols., LLC v. Stickler*, 2007 WL 700821, at *3 (S.D.N.Y. Mar. 7, 2007) (quoting *Carlson v. Cuevas*, 923 F. Supp. 76, 78 (S.D.N.Y. 1996)).  The allegations of the complaint and the materials incorporated therein satisfy that test.  According to the complaint, Defendants injected themselves into the State of New York, by having "several conversations," Dkt. No. 17 ¶ 23, with Plaintiff in New York in order to induce Plaintiff to sign the Escrow Agreement. Defendants negotiated extensively with Plaintiff, which was located in New York, including by email, *id.* ¶¶ 22–24, 27–29, sent Plaintiff a draft Escrow Agreement in New York, *id.* ¶ 24, and, to convince Plaintiff to sign the Escrow Agreement, represented to Plaintiff in New York that Defendants would "add in to the Escrow Agreement that all payments to the Manufacturer will be made directly by the Escrow Agent," *id.* ¶ 27.  Williams' contacts with New York were not "random, fortuitous, or attenuated," *Wahlhuetter*, 2021 WL 6205506, at *5, nor were they limited to one or two contacts made "by mistake," *Licci*, 984 N.E.2d at 901.  Knowing that Plaintiff was located in New York, Williams deliberately reached out to Plaintiff for the avowed purpose of having Plaintiff agree to a contract that financially benefitted Aaron & Gianna, and

then persuaded Plaintiff to sign the Escrow Agreement in New York.  *See N. Fork Partners*, 2020 WL 6899486, at *7; *see also Roxx Allison Ltd v. Jewelers Inc.*, 385 F. Supp. 377, 381 (S.D.N.Y. 2019) ("New York law is clear that a party is subject to personal jurisdiction when that party makes repeated, purposeful telephone calls into the state for the purpose of transacting business.").  The contacts with New York in negotiating the agreement were volitional and "active (rather than responsive)" and were not merely coincidental.  *Eades*, 799 F.3d at 168.

Moreover, the emails and calls were in service of what was contemplated to be an ongoing relationship between Defendants, pursuant to which Defendants provided services to Plaintiff in New York.  *See Fischbarg*, 880 N.E.2d at 27; *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551 (N.Y. 1977).  The Escrow Agreement establishes a three-way relationship among Plaintiff, Aaron & Gianna, and Vetcomm, under which Aaron & Gianna assumed duties to both Plaintiff and Vetcomm.  Dkt. No. 20-4 at 1 (indicating agreement is among Plaintiff, Vetcomm, and Aaron & Gianna).  The agreement specifically contemplates the ongoing conduct of business by Aaron & Gianna into New York.  Plaintiff is identified as a New York limited liability company, *id.*, the signature line provides an address for Plaintiff in New York, New York, *id.* at 5, Plaintiff designates Aaron & Gianna as its escrow agent under the Escrow Agreement and Aaron & Gianna agrees to accept such designation and appointment, *id.* ¶ 2, Plaintiff agrees to deposit funds in the escrow account to be administered by Aaron & Gianna over time in separate installments, *id.* ¶ 4, and Aaron & Gianna is to be paid from the proceeds to be generated for Vetcomm from the transaction set forth in the Escrow Agreement, *id.* at p. 1.  Further, that transaction—which Aaron & Gianna agreed to perform services to facilitate—has a distinctly New York focus.  Under the Escrow Agreement, Vetcomm was to sell isolation gowns to Plaintiff to be delivered into New York for the benefit of the State of New York.  *See id.* ¶ 1

15

("'Seller' shall sell, and 'Buyer' shall purchase, the isolation gowns . . . as set forth pursuant to the terms and conditions of [the invoice], which is attached hereto and made part of this Agreement."). Thus, the Escrow Agreement did not simply provide for Aaron & Gianna to deliver escrow services to Plaintiff or to Vetcomm. It was a tripartite agreement under which Vetcomm agreed to sell Plaintiff isolation gowns for the State of New York and Plaintiff agreed to pay for them and Aaron & Gianna agreed to act as escrow agent for both parties to facilitate that transaction, in exchange for proceeds from the transaction. Defendants thereby invoked the privileges of New York law. *See, e.g.*, *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 9–10 (2d Cir. 2018) (summary order) ("The 'overriding criterion' in determining whether an entity 'transacts any business' in New York within the meaning of the statute is whether the entity 'purposefully avails itself of the privilege of conducting activities within New York.'" (quoting *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 993 (N.Y. 2014))).

Plaintiff's fraud claim arises from Defendants' transaction of business in New York. The connection between Defendants' New York contacts and Plaintiff's claim is not "merely coincidental," *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 132 (2d Cir. 2022) (quoting *Johnson v. Ward*, 829 N.E.2d 1201, 1203 (N.Y. 2005)), or "tangential," *Sole Resort*, 450 F.3d at 104. Those contacts form the "specific transaction underlying [the] claim," "bringing about the injuries" of which Plaintiff complains. *Daou*, 42 F.4th at 132. Plaintiff alleges that it was Defendants' communications into New York—sending the draft Escrow Agreement, representing that it bound Defendants to send the escrowed monies only to the manufacturer, and negotiating the Escrow Agreement and inducing Plaintiff to sign it—that constituted the fraud and gave rise to Plaintiff's fraud damages. Plaintiff suffered its injury when, pursuant to the agreement it had been induced to sign, it transferred the funds to be escrowed from New York. Dkt. No. 17 ¶ 29.

Plaintiff therefore easily establishes an "articulable nexus or substantial relationship between the business transaction and the claim asserted." *Licci*, 984 N.E.2d at 901.

Plaintiff has also satisfied the Court that it has personal jurisdiction over Plaintiff's claims of breach of contract, unjust enrichment, and conversion for similar reasons.  Defendants' communications into New York are sufficient to establish personal jurisdiction in New York if they are "related to some transaction that had its center of gravity inside New York, into which a defendant projected himself."  *DirecTV Latin Am.*, 691 F. Supp. 2d at 420 (quoting *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005)).  The Escrow Agreement has its center of gravity in New York, for reasons previously stated.  Although denominated "Escrow Agreement," the contract hardly was so limited.  It was an agreement for the purchase of PPE equipment by a buyer in New York for delivery to the State of New York, under which Aaron & Gianna agreed to perform services for both buyer and seller to facilitate the transaction, and with payment to come from the transaction.  *See N. Fork Partners*, 2020 WL 6899486, at *11 ("The 'center of gravity' of the contract is at least in New York, the location of the lender and loan, but perhaps Georgia, the location of the borrower, could also be a center of gravity."); *Roxx Allison*, 385 F. Supp. 3d at 383 ("New York is plainly at least one center of gravity of the transactions at issue. . . .  [T]his case does not involve an isolated transaction, nor was the defendant unaware of plaintiff's location.  Defendant entered this relationship with eyes open.  Proceeding in this forum will work no grave injustice.").

Plaintiff's contract, quasi-contract, and conversion claims all also arise from those New York contacts.  The Second Circuit has held that where a party's New York contacts have given rise to a contract that has its center of gravity in New York, a claim that turns on breach of those contractual obligations has a "substantial relationship" to New York, satisfying the "arising

under" prong.  *Sole Resort*, 450 F.3d at 105.  The complaint thus satisfies the "arising under"

prong.  Although each of Plaintiff's claims for breach of contract, unjust enrichment, and

conversion are based on Defendants' conduct in Louisiana sending funds to Arizona, the claims

all turn upon the alleged violation of contractual provisions generated through Defendants'

contacts with New York, in furtherance of an agreement where New York is the center of

gravity.  Plaintiff alleges that Defendants breached the Escrow Agreement because they "failed

to perform by either transferring the $113,000 to Medline for the PPE, or returning the $113,000

to Plaintiff," and because they instead "transferred the money to [a] newly formed and

undercapitalized third party."  Dkt. No. 17 at ¶¶ 45–49, 62–66.  Plaintiff alleges that Defendants

are liable in unjust enrichment, because "[i]t is against equity and good conscience that

Defendants get enriched by taking $113,000 from Plaintiff, without providing the goods

bargained for."  *Id.* ¶¶ 58–61.  Finally, Plaintiff alleges that Defendants are liable for conversion,

asserting that it "deposited $113,000 into an escrow account controlled by Defendants" in

accordance with an "agreement [which] called for that money to be used to pay Medline," but

that "Defendants have absconded with Plaintiff's $113,000, in derogation of Plaintiff's rights to

the $113,000."  *Id.* ¶¶ 67–70.  Each claim rests on the obligations of the Escrow Agreement;

thus, because the Escrow Agreement's center of gravity is in New York, the Court is permitted to

exercise personal jurisdiction over Defendant with respect to claims that have a substantial nexus

to the Escrow Agreement.

Finally, the Court's exercise of personal jurisdiction over Defendants comports with the

Due Process requirements of the Constitution.  The Due Process Clause of the Constitution

requires minimum contacts with the forum state such that the maintenance of the suit does not

offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945).  Because N.Y. C.P.L.R. § 302 permits the exercise of personal

jurisdiction in a narrower range of circumstance than the Due Process Clause, this Court's

exercise of personal jurisdiction under Section 302(a)(1) for the Defendants comports with

constitutional due process.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006)

("[T]he constitutional requirements of personal jurisdiction are satisfied because application of

§ 302(a) meets due process requirements."); *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F.

Supp. 2d 458, 469 (S.D.N.Y. 2008) ("[T]he Due Process Clause permits the exercise of

jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant

meeting the standards of § 302 will satisfy the due process standard.").

## II.  Failure to State a Claim

      Because Plaintiff has pleaded that the Court has personal jurisdiction over its claims, the

Court proceeds to consider Defendants' motion to dismiss the complaint for failure to state a

claim.  As an initial matter, the parties agree that New York law should apply to Plaintiff's

claims for fraud, unjust enrichment, and conversion,[9] but dispute the appropriate substantive law

to apply to Plaintiff's claim for breach of contract.  While Plaintiff argues that New York

substantive law should apply, Dkt. No. 24 at 6, Defendants assert that Louisiana substantive law

applies, Dkt. No. 20-2 at 10–11; Dkt. No. 27 at 4.  Here, the Escrow Agreement contains a

---

[9] Defendants initially asserted that Louisiana substantive law applied to each of Plaintiff's
claims.  *See* Dkt. No. 20-2 at 10–11 ("Louisiana substantive law applies to Plaintiff's causes of
action pursuant to the choice of law provision set forth in Paragraph 15 of the Escrow Agreement
. . . .").  After Plaintiff asserted that New York law substantive law applied to its claims,
Defendants agreed with Plaintiff that New York substantive law applied to Plaintiff's claims for
fraud, unjust enrichment, and conversion.  *See* Dkt. No. 27 ("Plaintiff appears to argue correctly
in opposition that its tort claims are outside of the scope of the parties' contractual Louisiana
choice of law provision.").  "Where '[t]he parties' briefs assume' that a certain body of law
controls, 'such implied consent is sufficient to establish choice of law.'"  *Flatiron Acquisition
Vehicle, LLC v. CSE Mortg. LLC*, 2019 WL 1244294, at *6 (S.D.N.Y. Mar. 18, 2019) (quoting
*Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)); *see also Pac. Indem. Co.
v. Kiton Corp.*, 2022 WL 4237092, at *2 (S.D.N.Y. Sept. 14, 2022).

choice-of-law provision which states that, "[the] Agreement is intended as a contract under the laws of the State of Louisiana and will be governed thereby and construed in accordance therewith."  Dkt. No. 20-4 at 4.

The basis for subject matter jurisdiction in this case is diversity of citizenship pursuant to 28 U.S.C. § 1332.  *See* Dkt. No. 17 ¶ 3.  "A federal court sitting in diversity jurisdiction must apply the choice-of-law principles of the forum state, in this case New York."  *Fargas v. Cincinnati Mach., LLC*, 986 F.Supp.2d 420, 423–24 (S.D.N.Y.2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 (1941)); *see also Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012) ("In cases where jurisdiction is based on the diversity of the parties' citizenship, a federal court will apply the choice-of-law rules of the forum state, which is New York in this instance.").  The Court must "look[] to the choice-of-law rules of New York to determine whether and to what extent the parties' contractual choice should be honored."  *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987); *see also Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (same); *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (same); *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (same); *cf. Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 333 (2d Cir. 2005) ("New York courts decide the scope of such clauses under New York law, not under the law selected by the clause.").  "Moreover, the validity of a contractual choice-of-law provision is 'decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses.'"  *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *14 (S.D.N.Y. June 6, 2022) (quoting *Lehman Bros. Special Fin., Inc.*, 414 F.3d at 335).

"Under New York law, great deference is to be given a contract's designation of the law that is to govern disputes arising from the contract, and that designation is determinative if the state selected has sufficient contacts with the transaction."  *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984); *see also Int'l Bus. Machines Corp. v. Mueller*, 2017 WL 4326114, at *4 (S.D.N.Y. 2017) (same).  If a claim falls within a contract's choice-of-law provision and the provision calls for application of a certain state's law, that law will generally be applied "so long as the chosen law bears a reasonable relationship to the parties or the transaction," but it will not be applied "where the chosen law 'violates some fundamental principles of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.'"  *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500–01 (N.Y. 2006); *see also United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020) ("New York law is unambiguous in the area of express choice of law provisions in a contract.  Absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." (quoting *Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996); *Medtronic, Inc. v. Walland*, 2021 WL 4131657, at *4–6 (S.D.N.Y. Sept. 10, 2022) (explaining that, even after the New York Court of Appeal's decision in *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917 (N.Y. 2015)—which stated that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract"—a court should consider whether a choice-of-law provision bears a reasonable relationship to the parties or transaction or violates a fundamental policy of a state with a materially greater interest than the chosen state).  Where a breach of contract might be brought in more than one jurisdiction, the courts in each jurisdiction will follow their jurisdiction's own conflicts-of-law principles in deciding the body of law that applies to the

parties' agreement.  Those principles may well vary.  *See Klaxon*, 313 U.S. at 496 ("The conflict of laws rules to be applied by the federal court in [the forum state] must conform to those prevailing in [the forum state's] state courts. . . .  Whatever lack of uniformity this may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors.  It is not for the federal courts to thwart such local policies by enforcing an independent 'general law' of conflict of laws."); Restatement (Second) Conflict of Laws § 188 comment b (noting that varying "purposes, policies, aims and objectives" across jurisdictions may cause "competing local law rules" to differ).  The rule respecting choice-of-law clauses provides at least some protection against one or the other party choosing *ex post* a body of law to apply to the agreement that the parties would not have chosen *ex ante* and permits the parties, within bounds, to fix the law at the time of contracting the law that will be applied to any disputes between them.  It thereby honors the principle that "persons are free within broad limits to determine the nature of their contractual obligations" and "the demands of certainty, predictability and convenience," while at the same time preventing parties from opting into the law of a particular state that has no reasonable relationship to the parties or the transaction.  *See* Restatement (Second) Conflict of Laws § 187 comment e.

Here, because Louisiana bears a reasonable relationship to the parties and to the transaction, the Court will not disturb the agreement made by the parties that was enshrined in the choice-of-law provision of the Escrow Agreement.  The Court thus analyzes Plaintiff's claim for breach of contract under Louisiana law, and analyzes Plaintiff's claims for fraud, unjust enrichment, and conversion under New York law.  Dkt. No. 20-4 at 4.

A.      **Breach of Contract**

Plaintiff alleges that Defendants breached the Escrow Agreement because they "failed to perform by either transferring the $113,000 to Medline for the PPE, or returning the $113,000 to Plaintiff," and because they instead "transferred the money to [a] newly formed and undercapitalized third party."  Dkt. No. 17 at ¶¶ 45–49, 62–66.[10]  Specifically, Plaintiff asserts that it and Defendants "entered into a legally enforceable, binding contract when Plaintiff, Aaron & Gianna and Vetcomm entered into the Escrow Agreement, in conjunction with Plaintiff and Vetcomm agreeing to the purchase and sale of the PPE."  *Id.* ¶ 47.  Plaintiff alleges that pursuant to that agreement, Aaron & Gianna was obligated to "act as an escrow agent and fiduciary for funds deposited in an escrow account on behalf of Plaintiff."  *Id.* ¶ 63.  Plaintiff asserts that it performed under the agreement when it "deposited $113,000 in to the escrow account . . . ."  *Id.* ¶ 64.  According to Plaintiff, Aaron & Gianna breached the Escrow Agreement because it "failed to perform by either transferring the $113,000 to Medline for the PPE, or returning the $113,000 to Plaintiff," and because it instead "transferred the money to [a] newly formed and undercapitalized third party."  *Id.* ¶ 65.  Finally, Plaintiff asserts that the breach "damaged Plaintiff in the amount of $113,000."  *Id.* ¶ 66.

Defendants respond that they "did not breach any contractual duty to Plaintiff by disbursing the escrowed funds in accordance with the escrow agreement terms."  Dkt. No. 20-2 at 12.  Defendants argue that they disbursed the escrow funds "in accordance with paragraph 8 of the Escrow Agreement, which obliged Defendants to 'disburse the funds from the escrow

---

[10] The complaint includes two separate sections asserting claims for breach of contract.  *See* Dkt. No. 17 ¶¶ 45–49, 62–66.  The first cause of action, *id.* ¶¶ 45–49, appears bring a claim against both Defendants, while the second cause of action, *id.* ¶¶ 62–66, appears to bring a claim against only Aaron & Gianna.  Both claims are based in substance upon an alleged breach of the Escrow Agreement, and appear to be almost entirely duplicative.  The Court thus treats both sections of the complaint as asserting a single claim for breach of contract against both Defendants.

account [. . .] in connection with written instructions from the Seller, or the Seller's designated counsel, broker, or agent[.]'" *Id.* at 13 (quoting Dkt. No. 20-4 ¶ 8) (alteration in original). Defendants further contend that, "to the extent Plaintiff argues that the Firm breached paragraph 6(A) of the Agreement by not releasing the escrowed funds to Medline, the first sentence of paragraph 8 explicitly references paragraph 6 and states that the Firm was obligated to disburse the funds pursuant to the written instructions provided by Vetcomm.  Dkt. No. 27 at 5 n.1. Defendants also point to paragraph nine of the Escrow Agreement, under which "Williams was entitled to rely upon the aforementioned instructions, and was not required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein." *Id.* at 5.  Defendants also argue that they did not breach the Escrow Agreement by failing to return the $113,000 to Plaintiff—as alleged in the complaint—because "no provision of the Escrow Agreement obligat[ed] Defendants to recoup or return funds that were dispersed in accordance with the agreement." Dkt. No. 20-2 at 8.  In summary, Defendants argue that Plaintiff fails to state a claim for breach of contract because "Williams properly disbursed the escrowed funds in accordance with paragraph 8 of the Escrow Agreement . . . ." *Id.*

Analysis of a breach of contract claim pursuant to Louisiana law "begins with the Civil Code of Louisiana and the definitive holdings of the Louisiana Supreme Court." *Mary v. QEP Energy Co.*, 24 F.4th 411, 416 (5th Cir.), *cert. denied*, 143 S. Ct. 93 (2022) (internal citation removed).  The Louisiana Civil Code states that, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906.  It also dictates that a party to a contract "is liable for the damages caused by his failure to perform a conventional obligation."  La. Civ. Code art. 1994.  "In Louisiana, a breach-of-contract claim

has three essential elements: (1) the obligor's undertaking an obligation to perform, (2) the

obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in

damages to the obligee." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018)

(quotations and citations omitted); *see Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275,

283 (5th Cir. 2023) ("The elements of a breach of contract claim under Louisiana law are: (1) the

existence of a contract; (2) a party's breach thereof; and (3) resulting damages.").

In interpreting contracts, the Louisiana Civil Code instructs courts that, "[i]nterpretation

of a contract is the determination of the common intent of the parties."  La. Civ. Code art. 2045.

"The parties' intent will be determined by the words of the contract if they are clear, explicit, and

lead to no absurd consequences."  *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 14-1326,

p. 5 (La. App. 4 Cir. 5/20/15); 165 So. 3d 1211, 1216, *writ denied*, 15-1449 (La. 10/9/15); 178

So. 3d 1005.  "Words susceptible of different meanings must be interpreted as having the

meaning that best conforms to the object of the contract."  La. Civ. Code art. 2045.  "A provision

susceptible of different meanings must be interpreted with a meaning that renders it effective and

not with one that renders it ineffective."  *Id.* art. 2049.  "Each provision in a contract must be

interpreted in light of the other provisions so that each is given the meaning suggested by the

contract as a whole."  *Id.* art. 2050.

Plaintiff's complaint plausibly states a claim for breach of contract against Aaron &

Gianna.[11]  First, Plaintiff has pleaded, and Aaron & Gianna does not dispute, that the Escrow

---

[11] To the extent that Plaintiff does bring a claim against Williams for breach of the Escrow
Agreement, *see supra* note 10, that claim is dismissed.  Williams is not himself a party to the
Escrow Agreement, Dkt. No. 20-4, and Plaintiff has not alleged a theory under which Williams
could be held personally liable for the failure of Aaron & Gianna to perform its obligations under
the Escrow Agreement, *see, e.g., Tabor v. Madison Parish Hosp. Serv. Dist.*, 2015 WL
10012992, at *3 (W.D. La. Nov. 19, 2015), *report and recommendation adopted*, 2016 WL
483115 (W.D. La. Feb. 5, 2016) (dismissing breach of contract claim against individual

Agreement is valid and binding on Plaintiff and Aaron & Gianna.  Second, the Escrow

Agreement required Aaron & Gianna to "disburse the funds deposited by [Plaintiff] in the

following respects: (a) 50% of Funds needed to secure 100,000 Units/Goods @ $2.26 per unit, of

$113,000.000 will be released immediately directly to [Medline] on behalf of [Vetcomm] to

secure order of 100,000 Units/Goods from Manufacturer."  Dkt. No. 20-4 ¶ 6.  The Escrow

Agreement then dictates that "[Aaron & Gianna] will disburse the funds from the escrow account

in accordance with the payment schedule identified in paragraph '6' above, and in connection

with written instructions from [Vetcomm], or [Vetcomm's] designated counsel, broker, or

agent."  *Id.* ¶ 8.  Finally, the Escrow Agreement explicitly affirms that "[Aaron & Gianna] will

be entitled to rely upon the aforementioned instructions and other matters covered thereby," and

that "[a]ll parties further confirm and agree that [Aaron & Gianna] does not assume any

responsibility for any of the transactions to be performed and will perform the . . . services solely

pursuant to this Agreement, and at the direction of [Vetcomm] per written instruction and

pursuant to the payment schedule as identified in paragraph '6' above."  *Id.* ¶ 9.

Plaintiff has plausibly alleged that Aaron & Gianna's disbursement of the $113,000 to

"Medx One Corp in Arizona," Dkt. No. 17 ¶ 38, violated the Escrow Agreement's mandate that

Aaron & Gianna disburse the $113,000 "directly to [Medline]," Dkt. No. 20-4 ¶ 6.  The Escrow

---

defendants because there were "no allegations that the individual defendants were parties to the
contract or that they bound themselves to do anything under the terms of the contract," and
because "[i]t is manifest that no action for breach of contract may lie in the absence of privity of
contract between the parties"); *Andretti Sports Marketing Louisiana, LLC v. Nola Motorsports
Host Comm., Inc.*, 147 F. Supp. 3d 537, 561–62 (E.D. La. Nov. 24, 2015) ("The Louisiana
Supreme Court noted that under Louisiana law, '[t]he general rule [is] that corporations are
distinct legal entities, separate from the individuals who comprise them.'" (quoting *Riggins v.
Dixie Shoring Co.*, 590 So.2d 1164, 1167 (La. 1991) (alteration in original))).  Plaintiff has
therefore failed to plausibly allege that Williams undertook any contractual obligation, *see
IberiaBank*, 907 F.3d at 835, and the breach of contract claim as against him must be dismissed.

Agreement need not be read, as Defendants argue, to permit Aaron & Gianna to disburse the funds to any party designated by Vetcomm, so long as Aaron & Gianna followed Vetcomm's instructions.  Reading paragraphs six, eight, and nine of the Escrow Agreement together and striving to give meaning to every provision, the Escrow Agreement can be read to require Defendants to disburse the escrowed funds "directly to [Medline]," but following the wire instructions (and specifically the account information for Medline) provided by Vetcomm.  Such a reading is plausible, and would comport with Louisiana law requiring that contract provisions be interpreted "with a meaning that renders it effective and not with one that renders it ineffective."  La. Civ. Code Ann. art. 2049.  Under that interpretation, paragraph eight of the Escrow Agreement, which states that Defendants will disburse the funds "in connection with written instructions from [Vetcomm], or [Vetcomm's] designated counsel, broker, or agent," would be read to explain that the exact wiring instructions, which are not stated in the Escrow Agreement, are to be sent by Vetcomm to Aaron & Gianna.  Dkt. No. 20-4 ¶ 8.  And paragraph nine of the Escrow Agreement, which states that Aaron & Gianna "entitled to rely upon the aforementioned instructions and other matters covered thereby, and will not be required to investigate the authority of the person executing and delivering such instructions, or otherwise verify the accuracy of the statements or information presented therein," would be read to free Aaron & Gianna from any obligation to confirm that the wiring instructions provided by Vetcomm were authentic, or actually belonged to Medline.  *Id.* ¶ 9.  The Court need not, and does not, take a position as to whether such a reading of the Escrow Agreement is the best reading; at this stage the Court need only find, and does find, that Plaintiff has plausibly alleged a breach of contract.

Finally, Plaintiff adequately pleads that Aaron & Gianna's failure to perform caused damage. Plaintiff alleges that they transferred to Aaron & Gianna $113,000 pursuant to the terms of the Escrow Agreement, but that, by virtue of Aaron & Gianna's non-performance, Plaintiff did not receive the purchased PPE. Dkt. No. 17 ¶¶ 41–43; 65–66. Plaintiff has thus pleaded each of the elements of breach of contract as against Aaron & Gianna, and Defendants' motion to dismiss the claim for breach of contract as against Aaron & Gianna is denied. *See, e.g.*, *D.H. Griffin Wrecking Co., Inc. v. 1031 Canal Dev., LLC*, 463 F. Supp. 3d 713, 727 (E.D. La. May 29, 2020) (granting motion to dismiss breach of contract claim under Louisiana law where plaintiff alleged that the parties entered into an enforceable contract, that defendant breached the contract, and that plaintiff alleged it had suffered damages).

### B.      Fraud

"To establish fraud, a plaintiff must prove a misrepresentation or a material omission of fact which was known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance, and injury." *Curtis-Shanley v. Bank of America*, 970 N.Y.S.2d 830, 832 (2d Dep't 2013). In other words, the elements of a fraud claim under New York law are (1) a material misrepresentation of fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (4) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). When a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). In order to comply with Rule 9(b), "the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

"It is well settled under New York law that 'a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.'" *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 487 (S.D.N.Y. 1997) (Sotomayor, J.) (quoting *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 634 N.E.2d 940, 944 (N.Y. 1994)).  "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (internal citation omitted).  Thus, "[t]o maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted); *see also Int'l CableTel*, 978 F. Supp. at 487.

Here, Plaintiff's fraud claim is duplicative of its breach of contract claim, and the motion to dismiss for failure to state a claim is therefore granted.  Plaintiff alleges that it and Defendants "entered into a legally enforceable binding contract when Plaintiff, Aaron & Gianna and Vetcomm entered into the Escrow Agreement," but that Defendants committed fraud when they "misrepresented that any money put into the escrow account would be released to the Manufacturer, Medline."  Dkt. No. 17 ¶¶ 51, 53.  According to Plaintiff, "Defendants made this material misrepresentation of facts to induce Plaintiff to enter into the Escrow Agreement," and "Plaintiff relied upon Defendants' statements and written contract that the money would be released to Medline to further a business deal involving PPE."  *Id.* ¶¶ 55–56.  Plaintiff does not, however, plead any facts that would give rise to a finding that Defendants owed a legal duty,

independent to the contract, to Plaintiffs.  And under New York law, although "a promise [that] was made with a preconceived and undisclosed intention of not performing it . . . constitutes a misrepresentation of a material existing fact," *id.* (internal quotation marks omitted), "where a fraud claim 'is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie,'" *Bridgestone/Firestone*, 98 F.3d at 20 (quoting *McKernin v. Fanny Farmer Candy Shops, Inc.*, N.Y.S.2d 58, 59 (2d Dep't 1991)); *see also N.Y. Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie.").  Plaintiff has thus failed to state a claim for fraud upon which relief can be granted.

### C.    Unjust Enrichment

Plaintiff next asserts a claim against Defendants for unjust enrichment, alleging that "[i]t is against equity and good conscience that Defendants get enriched by taking $113,000 from Plaintiff, without providing the goods bargained for."  Dkt. No. 17 ¶¶ 58–61.

In order to state a claim for unjust enrichment under New York law, a party must allege that: "(1) the other party was enriched; (2) at that party's expense; and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (quoting *Citibank, N.A. v. Walker*, 787 N.Y.S.2d 48, 48 (2d Dep't 2004)).  "[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012).  "Unjust enrichment claims are available 'only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff,'

such as when 'the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.'" *In re Columbia Tuition Refund Action*, 2021 WL 790638, at *9 (S.D.N.Y. Feb. 26, 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).

"[Q]uasi-contractual claims are generally precluded where valid, enforceable contracts governing the particular subject matter of the case exist between the parties . . . ." *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 113 (E.D.N.Y. 2020) (citing *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006)); *see Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 610 (2d Cir. 1996) (holding that the existence of an enforceable contract governing a particular subject matter "ordinarily precludes recovery in quasi contract for events arising out of the same subject matter"); *A. Montilli Plumbing & Heating Corp. v. Valentino*, 935 N.Y.S.2d 647, 648 (2d Dep't 2011) ("The existence of an express agreement, whether oral or written, governing a particular subject matter precludes recovery in quasi-contract for events arising out of the same subject matter."). "[W]here there is a contract that expressly outlines the parties' own definition of their respective obligations, then courts are loath, due to considerations of 'both justice and efficiency,' to override those obligations in favor of 'obligations that the law would impose in the absence of agreement.'" *Frio Energy Partners*, 2023 WL 4211035, at *10 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2).

A claim in quasi-contract, such as unjust enrichment or promissory estoppel, will lie even in the presence of a contract either where (1) the contract does not cover the dispute in issue, *id.* at *8; *see Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (summary order); or (2) "a bona fide dispute exists as to the existence of the contract," in

which case "a plaintiff may proceed on both breach of contract and quasi-contract theories" in

the alternative, *Shetel Indus. LLC*, 2020 WL 5820599, at *35 (quoting *Nakamura v. Fujii*, 677

N.Y.S.2d 113, 116 (1st Dep't 1998)); *see Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523,

531 (S.D.N.Y. 2007) ("When there is a bona fide dispute as to the existence of a contract . . .

assertion of a breach of contract claim does not preclude [plaintiff] from pleading an unjust

enrichment claim in the alternative.").

      Plaintiff's unjust enrichment claim cannot lie along with the breach of contract claim.

First, under New York law, the theory of unjust enrichment is treated as a quasi-contractual

claim. *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) ("The theory of unjust

enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of an

agreement.").  Further, the Escrow Agreement covers the dispute at issue here, and neither party

asserts a dispute as to the existence of the Escrow Agreement.  Put simply, either Plaintiff has a

claim for breach of contract or it does not.  If Aaron & Gainna did not breach the Escrow

Agreement in disbursing the funds, it cannot be liable for breach of contract.  Plaintiff's claim for

unjust enrichment thus cannot lie alongside Plaintiff's claim for breach of contract, and must be

dismissed.

      Finally, even if the claim for unjust enrichment were not impermissibly duplicative of the

breach of contract claim, Plaintiff has failed to state a claim that Defendants was enriched.

Plaintiff alleges that it transferred $113,000 to Defendants, and that Defendants subsequently

transferred the funds to a third-party.  *See* Dkt. No. 17 ¶¶ 29, 38.  Plaintiff thus does not allege

that Defendants actually benefited from the alleged events.  *See Kaye v. Grossman*, 202 F.3d

611, 616 (2d Cir. 2000) (reversing a verdict in favor of plaintiff for unjust enrichment because

plaintiff "proffered insufficient evidence to support a finding that [defendant] actually

benefitted"); *Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 20 (2d Cir. 1983) (upholding dismissal of unjust enrichment claim where plaintiff failed to allege that defendant was enriched).

### D.   Conversion

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004) (quoting *Vigilant Ins. Co. of Am. v. Housing Auth. of the City of El Paso*, 660 N.E.2d 1121, 1126 (N.Y. 1995)); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997). "To plausibly allege a conversion claim, a plaintiff must show: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Benex LC v. First Data Merch. Servs. Corp.*, 2016 WL 1069657, at *5 (E.D.N.Y. Mar. 16, 2016) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)); *see Kim v. Lee*, 576 F. Supp. 3d 14, 33 (S.D.N.Y. 2021), *aff'd*, 2023 WL 2317248 (2d Cir. Mar. 2, 2023). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (internal citations omitted).

Courts interpreting New York law have held that "a cause of action alleging conversion cannot be predicated upon a mere breach of contract," and that the contracting party must also allege "a breach of duty distinct from, or independent of, the breach of contract." *Conn. N.Y. Lighting Co. v. Manos Bus. Mgmt. Co.*, 98 N.Y.S.3d 101, 103 (2d Dep't 2019); *see also Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA*, 2023 WL 6812984, at *10 (S.D.N.Y. Oct. 16, 2023); *Alishaev Bros. Inc. v. LA Girl Jewelry Inc.*, 2020 WL 1489841, at *13

(S.D.N.Y. Mar. 27, 2020) ("A claim for conversion will not lie under New York law where it merely restates or where it is predicated on a 'mere breach of contract.'" (quoting *MBL Life Assurance Corp. v. 555 Realty Co.*, 658 N.Y.S.2d 122, 124 (2d Dep't 1997)); *W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, 2004 WL 369147, at *5 (S.D.N.Y. Feb. 26, 2004) ("[A] claim for conversion is deemed redundant, and may be dismissed pursuant to Rule 12(b)(6), where damages are merely being sought for a breach of contract."); *Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*, 2004 WL 1933621, at *6 (S.D.N.Y. Aug. 30, 2004) ("[P]laintiff's conversion claim, predicated on defendant's allegedly wrongful seizure and possession of the accrued interest is merely duplicative of defendant's contract claim."); *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) ("In identifying the dealer agreement as the source of its allegedly superior right of possession, plaintiff tacitly admits that it is seeking to enforce a contract right, not a right tied to some independent duty under state law.  The appropriate remedy for a contracting party's failure to honor its obligations under a contract is an action for breach of contract.").[12]

Plaintiff's conversion claim also cannot lie along with the breach of contract claim. Plaintiff's claim for conversion therefore must be dismissed.  *See Poplar Lane Farm*, 449 F. App'x at 59 ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and

---

[12] In addition, "[w]here the defendant's exercise of dominion is authorized, . . . no claim of conversion can lie."  *Generation Next Fashions*, 2023 WL 6812984, at *10.  Here, if Aaron & Gianna's transfer of the funds was not authorized by contract, it will be liable for breach of contract.  And if it was authorized by contract, it cannot be liable in tort for conversion.

quasi contract, and quantum meruit, are generally precluded, unless based on a duty independent of the contract.").

## III. Transfer to Eastern District of Louisiana

Defendants argue that, if their claims are not dismissed, that they should be transferred to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404.  Dkt. No. 20-2 at 16–17.

Under 28 U.S.C. § 1404(a), even if a case is filed in a jurisdiction where venue is proper, a court may transfer the case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  In determining whether transfer is appropriate, courts consider the following ten factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances.  *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459–60 (S.D.N.Y. 2011); *see also N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors).  A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there.  *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Here, the subject transaction involved the sale of gowns to New York.  It is therefore appropriate to accord deference to Plaintiff's choice of New York as the forum in which to bring a suit arising out of that transaction.  Further, considerations of convenience do not require the Court to override such deference; the relevant witnesses and documents are likely to be located in both New York and Louisiana.  Finally, there is no efficiency to be gained, or interest of

justice to be served by transferring the action to Louisiana.  The Court thus declines to transfer the case.

## CONCLUSION

The motion by Defendants to dismiss the SAC is GRANTED IN PART and DENIED IN PART.  Plaintiff's claims for fraud, unjust enrichment, and conversion are dismissed as against both Defendants, and Plaintiff's claim for breach of contract is dismissed as against Williams.

The Clerk of Court is respectfully directed to close Dkt. No. 20.


SO ORDERED.


Dated: March 4, 2024
      New York, New York

                                        LEWIS J. LIMAN
                              United States District Judge